William H. BERRY, Plaintiff-Appellee-
Cross Appellant,

v.

SLADCO, INC., et al., Defendants-Appel-
lants-Cross Appellees.

CONTINENTAL OIL CO., INC., Defend-
ant-Third Party Plaintiff-Appellee,

v.

DIAMOND M. DRILLING COMPANY,
Third Party Defendant,
Travelers Insurance Company, Inter-
venor-Appellee.

No. 73–3023.

United States Court of Appeals,
Fifth Circuit.

June 7, 1974.

Wood Brown, III, New Orleans, La., for appellant.

John R. Martzell, New Orleans, La., for Berry.

Frank C. Allen, Jr., New Orleans, La., for Continental Oil & Travelers Ins. Co.

Sam A. Le Blanc, III, New Orleans, La., for Diamond Drilling.

Before GEWIN, GOLDBERG and CLARK, Circuit Judges.

GEWIN, Circuit Judge:

I

William H. Berry commenced this personal injury action against Sladco, Inc. (Sladco) pursuant to the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (1970) (Lands Act), for compensatory damages he claims to have sustained as a result of the alleged defective condition of the hydraulic casing tongs owned and furnished by Sladco pursuant to a lease for the purpose of casing a drill hole on an offshore platform in the Gulf of Mexico. Berry was an employee of the Louisiana Casing Crew & Rental Service Corporation (Louisiana Casing Crew) which had contracted with the Continental Oil Company (Continental), the lessor of the platform and drilling site, to case the drilling hole. Additionally, Sladco had contracted with Continental to supply tongs and a tongs operator which were necessary for the casing operation.

Following a trial on the issue of Sladco's negligence and the damages suffered by Berry, a jury returned a verdict against Sladco and awarded Berry $100,000.00 in compensatory damages in addition to an award for the medical expenses he had incurred as a result of his injuries. Thereafter, Sladco filed a motion for judgment notwithstanding the jury's verdict, a motion for remittitur or in the alternative a new trial, and a motion to limit interest on the amount awarded by the jury's verdict from the date of judgment pursuant to 28 U.S.C. § 1961 (1970), instead of the date of judicial demand as provided by Louisiana

law, L.R.S. 13:4203. Additionally, Sladco requested that the court retain jurisdiction over any claim which Sladco might wish to assert against Continental. Continental, an original party-defendant, had been non-suited prior to trial. The trial court denied all the motions except it did order that interest would accrue from the date of judgment.

Sladco has appealed and presents the following issues for our review. First, it asserts that the district court erred when it refused to submit for the jury's consideration a proffered instruction which Sladco characterizes as the law applicable to the doctrine of assumption of risk in Louisiana. All parties agree that this issue is governed by Louisiana law since the Outer Continental Shelf Lands Act, *supra,* looks to the applicable state law on substantive issues unless there is controlling federal law on the particular issue involved. Second, Sladco contends that the district court erred in failing to grant its motion for judgment notwithstanding the verdict since Berry failed to prove that the tongs were defective when they left its control and further that Berry's proof is infirm since he failed to show that Sladco knew or should have known that the tongs were defective. Third, the district court abused its discretion by refusing to retain jurisdiction over Continental. Finally, Sladco asserts that the trial court should have granted its motion for remittitur or in the alternative a new trial since the damages awarded by the jury are excessive. Berry has cross appealed on the interest issue. It is his contention that the district court should have granted interest from the time of judicial demand as permitted under Louisiana law. We affirm.

## II

In this case, Louisiana Casing Crew contracted with Continental to provide casing for the well hole on Continental's stationary platform located in the Gulf of Mexico. Berry was employed by Louisiana Casing Crew as a general casing hand and relief man. Berry was completely familiar with the various jobs of the crew.

One of the last steps in the construction of an oil and gas well before it is placed into production is the installation of casing. The casing operation results in the insertion in the well hole of a large diameter pipe which serves as a protective covering of the drill pipe. Once the casing procedure has begun, it is necessary to continue it until completion since there is a grave danger of the casing sticking in the well if the operation ceases for any extended period of time. Therefore an entire casing crew cannot take a "break" for lunch and rest periods. Instead each member of the crew takes a break separately. To provide for individual breaks and to prevent boredom which would result from continued operation in the same position over a long period of time, the members of a casing crew usually rotate from one position to another.

The necessary mechanical devices for the installation of casing pipe include tongs which are large wrenches employed to screw the successive joints of the casing pipes together as they are inserted into the well hole. Because Louisiana Casing Crew did not have large enough tongs to attach the pipes in the instant case, it was necessary for Continental to acquire the tongs from another source. Accordingly, Continental entered into a lease agreement with Sladco whereby Sladco would supply tongs and a tongs operator.

In the early morning hours of July 4, 1969, the casing operation began. Luther Arnold, Sladco's tongs operator, set up the tongs on two fifty-five gallon, five-foot high drums over the well hole. The tongs supplied by Sladco were over eight years old and from the beginning of their use in this operation, it was apparent that they were defective. Rather than securely biting the pipe which is necessary for a successful attachment of one pipe to another, the tongs began to slip. Apparently, the jaws of the tongs were defective which prevented firm at-

tachment and resulted in the slipping action. Several times Arnold was required to replace various parts of the tongs in an attempt to inhibit the slipping.

In late afternoon, Arnold decided to take his lunch break and Berry took his place at the tongs so the casing operation could continue. This was normal practice since the casing operation could not be interrupted for any extended period of time. In the event that the tongs slip, the operator is required to release the spring loaded throttle which allows the jaws of the tongs to return to a neutral position automatically. If the tongs are permitted to slip to the snub line that is placed in such a fashion as to keep the tongs stationary, they will snap back in a violent reaction. While Berry was operating the tongs, they slipped. When he attempted to use the throttle, it jammed and the tongs hit the snub line, snapped back and knocked Berry from the five-foot high barrel or drum on which he was standing resulting in severe injury to his right foot.

## III

■■ At trial, Sladco requested the court to give the following instruction for the jury's consideration in its determination of liability:

### DEFENDANT'S CHARGE 10

You are charged that a person who voluntarily exposes himself to a known danger assumes the risk, and is guilty of contributory negligence if injured.

This doctrine of assumption of the risk applies where the plaintiff, who knows of a particular peril, voluntarily enters into a particular activity with full knowledge of the danger of his doing so. Under the circumstances, even though the defendant might be negligent, plaintiff's recognition of this negligence and his choice to expose himself [to] any hazard created by this negligence bars his recovery.

The trial court refused Sladco's tendered instruction on assumption of risk and Sladco contends that it erred in this regard. A reading of the record and reference to applicable law convinces us that the trial court was correct.

First, the proffered instruction equates assumption of risk with contributory negligence and as such would have been confusing to the jury. Second, Sladco's primary affirmative defense at trial was an attempt to show that Berry had been guilty of contributory negligence in the operation of the tongs. Sladco relied exclusively on this defense in its answer to Berry's complaint, its opening statement to the jury, its questioning of various witnesses and as grounds for a directed verdict after all the evidence had been submitted for the jury's consideration. By the jury's answers to the special interrogatories presented for its finding of contributory negligence on the part of Berry, the jury found no negligence on his part. Third, the evidence shows that although Berry was aware that the tongs had been previously operating in an improper manner, he was not aware that the throttle on the tongs would stick thus preventing them from being placed in a neutral position once the slipping began. The evidence shows that the failure of the throttle to function properly in combination with other malfunctions of the tongs was the actual cause of the accident and as the jury concluded not the negligent operation of the tongs by Berry. Thus Berry did not assume the risk of an open throttle and the Louisiana hybrid of the doctrine of assumption of risk is inapplicable. *See* Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971). *Cf.* Chaney v. Brupbacher, 242 So.2d 627, 632 (La. App.1970). A complete reading of the instructions that were given by the district court leads us to the conclusion that appellant has suffered no harm by its failure to include appellant's confusing and misleading instruction on assumption of risk. *See* Brents v. Free-

man's Oil Field Service, 448 F.2d 601 (5th Cir. 1971).

▮ Similarly, appellant's other three contentions are equally without merit. There was sufficient evidence from which the jury could infer that the tongs left the control of Sladco in defective condition and that Sladco knew or should have known of the defective condition of the tongs. Furthermore the evidence supports the jury's damage award and thus Sladco was not entitled to a new trial or remittitur on this ground. Berry introduced extensive evidence as to time lost from work, reduced wages after the accident and the resultant incapacity of his foot following the accident. His proof amply supports the jury's award.

▮ Berry had originally joined Continental Oil Company as a party defendant in his suit seeking damages. Furthermore, Sladco filed a cross claim against Continental seeking indemnity for any liability which it might incur as a result of Berry's suit. On the eve of trial, both Berry and Sladco agreed to dismiss their respective actions against Continental and were content to rest the disposition of Berry's case on the liability which might be proved against Sladco alone. After the jury returned its verdict, Sladco filed a post trial motion seeking to. have the district court "retain" jurisdiction over Continental for any claims which Sladco might wish to assert against it. The trial court refused to "retain" jurisdiction. Sladco now contends that the trial court erred in refusing to "retain" jurisdiction. No abuse of the trial court's sound discretion was evidenced by its refusal to retain jurisdiction over Continental since previously Sladco had voluntarily dismissed its cross claim against Continental. We fail to perceive merit in such a contention.

▮ Sladco further asserts in connection with its retention of jurisdiction argument, that counsel for Berry contended in his closing argument that any negligence on the part of Luther Arnold could be imputed to his employer, Sladco, as a basis for holding it liable. No instructions were given by the court which would have permitted the jury to base liability purely on the actions of Sladco's employee Arnold. There was no objection by Sladco to the references made by Berry's counsel to the negligence of Arnold. Moreover, the great weight of the evidence clearly established a sufficient basis to support a conclusion by the jury that the tongs were defective at the time they were leased to Continental. In these circumstances it is our opinion that no prejudicial harm could have resulted to the substantial rights of Sladco from counsel's references to the alleged negligence of Arnold, even assuming as Sladco argues, that there was some indication in the evidence that Arnold was the "borrowed servant of Continental." Indeed the record clearly demonstrates that the trial proceeded against Sladco alone and Continental was not involved in the actual trial of the case.[1] Moreover, the

---

1. The record is not entirely clear as to the procedural maneuvers which took place on the eve of the trial. The record does indicate that the plaintiff dismissed his claim against Continental Oil Company and elected to proceed against Sladco alone. There appears to have been no objection to the dismissal on the part of Sladco. In its brief Continental asserts without contradiction on the part of Sladco that at the time plaintiff dismissed his claim against Continental Oil Company, Sladco also dismissed its cross-claim against Continental Oil Company and indicated to the trial judge that Sladco would go "head and head" against plaintiff. It is further asserted in the ·brief that at the same time Continental Oil Company dismissed its claim for indemnity and/or contribution against the drilling company. The witnesses for the drilling company and Continental Oil Company together with their attorneys left the court and did not participate in any of the proceedings. In a post trial memorandum filed in the district court, appendix page 348, counsel for Sladco asserted that there "did not seem to be any way that Continental could be successfully held in the litigation. Accordingly, at that juncture plaintiff's counsel non-suited Continental and the trial proceeded 'one on one' between plaintiff and Sladco."

"borrowed servant" contention asserted on this appeal was not a contested issue during the trial.

## IV

■ Berry has appealed on the issue of the proper time period to be employed in computing interest on the jury's award of damages to him. He contends that interest should accrue from the time of judicial demand as is provided under Louisiana law, L.R.S. 13:4203, since this action was brought under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. He maintains that when an action is brought under the Lands Act, applicable state law is controlling on the interest issue unless it contradicts federal enactments on the issue of judgment interest. By its judgment, the district court awarded interest from the date of judgment as provided by 28 U.S.C. § 1961, instead of the more favorable Louisiana interest statute which permits interest from the date of judicial demand. Berry contends that the court erred since the Louisiana law does not conflict with federal law but complements the federal interest statutes by providing a more complete remedy.

Resolution of Berry's disingenuous argument is controlled by the Supreme Court's opinion in Rodrigue v. Aetna Casualty and Surety Company, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). In *Rodrigue,* the Court noted the conditions which should exist before a district court may properly look to state jurisprudence with respect to a particular issue of law which may arise when an action is brought under the Lands Act. The Court made clear that state law should be applied only where there is no controlling federal law on the issue involved. The Court stated:

> The purpose of the Lands Act was to define a body of law applicable to the seabed, the subsoil, and the fixed structures such as those in question here on the outer Continental Shelf. *That this law was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable federal law, is made clear by the language of the Act.* Section 3 makes it the "policy of the United States" that the affected areas "appertain to the United States and are subject to its jurisdiction, control, and power of disposition." Section 4 makes the "Constitution and laws and civil and political jurisdiction of the United States" apply "to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State." Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the "adoption of State law as the law of the United States." Under § 4, the adjacent State's laws were made "the law of the United States for [the relevant subsoil and seabed] and artificial islands and fixed structures erected thereon," *but only to* "the extent that they are applicable and not inconsistent with * * * other Federal laws."* (Emphasis added)

395 U.S. at 355-356. The tenets of *Rodrigue* make firm the conclusion that 28 U.S.C. § 1961 controls the applicable time period for determining interest in this case. Section 1961 provides in relevant part that, "interest *shall* be calculated from the date of the entry of the judgment, at the rate allowed by State law." (emphasis added) This is a positive statement of federal law, obligatory in its terms, and as such is controlling in an action brought under the Lands Act. See Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Moreover, permitting interest to accrue from judicial demand would certainly be inconsistent with the result provided by Section 1961. The district court was correct in limiting interest from the date of its judgment.

Accordingly, the judgment of the district court is affirmed.