AYRES, Judge.
By this action in tort instituted by Thurman E. Smith and Home Indemnity Company, workmen’s compensation insurer of Smith’s employer, against the Indiana Lumbermens Mutual Insurance Company, the public liability insurer of a Ford automobile of one Ralph C. Norton, plaintiff Smith seeks to recover damages for personal injuries, and plaintiff Plome Indemnity Company, reimbursement of compensation and medical expenses paid as a result of an accident on February 1, 1964, wherein plaintiff Smith lost the distal phalanx of his right middle finger.
No controversy exists as to the manner of the occurrence of the accident. Plaintiff Smith was employed by Oil City Motors, Inc., as sales manager and as assistant manager of the repair and body shop. On the date of the accident, Norton, who had purchased an automobile from the motor company, drove it into the repair shop and conferred with' Smith, whom he informed that a noise had developed in his motor which he thought was in the fan belt or fuel pump. Smith stated he would endeavor to ascertain the trouble and thereupon walked to the front end of the car, raised the hood, and looked at and felt the fan belt to determine if it was loose and slipping or had become worn. Norton had followed Smith back to the car at a distance of several feet. While Smith was examining the fan belt, Norton, without any notice to Smith or giving him any warning, and whom, at the time, he could not see because of the uplifted hood, opened the car door, reached inside, and turned the key to the ignition switch. The motor “turned over” two or three times, setting in motion its various pulleys and belts. Smith’s right 'middle finger was caught by a belt, forced over a pulley of the air conditioner, and cut off.
Negligence charged to Norton consisted of his starting the motor without having been requested to do so and in doing so without warning or notice to Smith, who, he knew, was at the time engaged in making an inspection of the mechanical operation of some of the parts of the motor beneath the hood.
The defense urged was a denial of negligence on Norton’s part, and, in the alternative, a plea of contributory negligence on the part of Smith in placing his hand in a dangerous position without having first *416 taken proper precaution, and in failing to warn Norton not to start the motor. In the further alternative, it is contended that Smith assumed the risk of injury by voluntarily exposing himself to a known danger.
Without an assignment of written reasons, there was judgment in favor of defendant on the ground, we are informed, that plaintiffs’ charge of negligence against Norton had not been substantiated by the evidence. From the judgment accordingly rejecting their demands, plaintiffs prosecute this appeal.
Where the facts are not in dispute on a particular issue in a case, such as the question of fault or negligence of defendant’s assured in the instant case, only questions of law are presented on an appeal. Roberts v. Caddo Parish School Board, 213 La. 436, 34 So.2d 916 (1948); Panama R. Co. v. Beckford, 231 F. 436, C.C.A. 5 (1916).
Therefore, in such cases, the doctrine of manifest error, applying to the findings of a trial court on questions of fact, has no application.
A tort has been generally defined as a breach or a disregard of a legal duty, Prescott v. Central Contracting Co., 162 La. 885, 111 So. 269 (1927). Thus, a fundamental basis of the general law of tort in this State is found in LSA-C.C. Art. 2315, which, in part, reads as follows:
“Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * *
As was emphasized in Weadock v. Eagle Indemnity Co., La.App., 15 So.2d 132, 138—139 (1943),
“Every tort action embraces three distinct elements, viz.:
“1. Existence of legal duty from defendant to plaintiff;
“2. Breach of that duty; and
“3. Damage as a proximate result.”
The established facts of this case, in view of the aforesaid legal principles, disclose that Norton’s actions met each of the aforesaid tests. Norton certainly owed Smith the duty of noninterference with performance of the task he had entrusted to him—that he would commit no act during the performance of that task that would injure him. Norton breached that duty by turning on the ignition switch while Smith’s hand was on or near the fan belt. The-mangled hand and the severed finger were the direct results.
Once having informed Smith of his purpose of bringing his automobile into the shop, and having expressly or impliedly learned from him that he would undertake to locate the cause of the malfunctioning motor, a bailor-bailee relationship was created between Norton and Smith, acting for his employer.
The rule is stated in 61 C.J.S. Motor Vehicles § 729, p. 876.
“A bailment is created when a motor vehicle is delivered by its owner or custodian to, and is accepted by, another person for repairs or servicing; and, as bailee, the person with whom the vehicle is left occupies the position of an independent contractor * *
While one who employs an independent contractor escapes liability for the negligence of such contractor, he is nevertheless answerable for his own negligence. 27 Am. Jur., pp. 508-509, “Independent Contractors,” § 30. Thus, where an employer interferes with or meddles in work being done by an independent contractor, the employer is liable for injuries resulting from such interference. 27 Am.Jur., pp. 510-511, “Independent Contractors,” § 31. A bailment gives the bailee the sole custody and control of the property deposited and the right to exclusive possession, even against the bailor. 8 C.J.S. Bailments § 20, p. 371.
*417 Norton’s failure to use such care as is necessary to avoid a danger which should have been anticipated, by reason of which plaintiff suffered injury, constitutes actionable negligence. The likelihood of the occurrence of an accident, when Norton turned on the motor unbeknown to Smith, should have been obvious.
In point is Wall v. Windmann, 142 So.2d 537, La.App., 4th Cir. 1962, the facts of which were stated:
“On October 23,1957, plaintiff, Virgil Wall, and one Calvin Windmann, automobile mechanics, both being employees of Dumas Chevrolet Company, an automobile dealer in New Orleans, were working together in the employer’s establishment adjusting a new automotive pickup truck so as to make it fit to deliver to a customer of the dealer. Plaintiff, Wall, standing in front of the vehicle, the hood of which was open and up, was working on the engine while Windmann was inside the cab with his legs upon the seat and his back on the floor making some adjustments under the instrument panel or dashboard. Each of the men knew the other was working on the truck, but were unable to see each other because of the open hood.
“At one stage of the work plaintiff called to Windmann to start the motor, and Windmann, while in the upside-down position, turned the ignition key and pressed the starter button unaware that the truck was in gear or that Wall was in front of the truck. The vehicle lurched forward pinning plaintiff’s right leg between a workbench and the front bumper, causing severe injuries.”
From these facts, it was concluded that Windmann’s negligence was manifest and that Wall was free of contributory negligence under the charge that he remained in front of the truck when he knew that an automobile, when started, might go forward and could possibly inflict injury.
Plaintiff, in the instant case, was only required to guard against a probable anticipated danger. No basis has been established that would have required him to have anticipated Norton’s action in starting the motor while he was making an inspection of the belts attached thereto.
Nor do we find any basis for applying the doctrine of the assumption of risk. Appropriate is the observation made in Finn v. Employers’ Liability Assurance Corporation, 141 So.2d 852, 876, La.App., 2d Cir.1962:
“The applicable rules are that, where the defense relied on is the assumption by the employee of the risk to which he was subjected, it must appear with reasonable certainty either that he was specifically informed of such risk or it was so obvious that it could not have escaped his attention. Nor can an employee be understood as contracting to take upon himself risks which he neither knows, nor suspects, nor has reason to look for; rather, it would appear more reasonable to imply a contract on the part of the master not to invite the servant into unknown dangers than for the servant to run the risk of them.”
See, also, the cases therein cited, as well as 38 Am.Jur., pp. 847, 848, “Negligence,” § 173, Elements of Defense.
The final question for consideration relates to the quantum of an award to compensate plaintiff for the injuries sustained. That plaintiff sustained permanent as well as painful injuries, the record leaves no doubt. The distal one-half of the distal phalanx of plaintiff’s right middle finger was amputated. The rough splintered fragments of the remainder of the phalanx were smoothened, after which a skin graft, taken from his left upper arm, was applied. The finger was immobilized in a splint for a period of two weeks, and, to alleviate pain, his arm was carried in a sling. Medication through injections, as well as orally, was administered to counteract and prevent the *418 development of infection. While the shin graft was hailed as a success, numbness nevertheless resulted and persists in a portion of the finger, as does greatly increased sensitiveness in other areas thereof. As a consequence, the end of the finger is very sensitive and in striking an object excruciating pain is produced.
The permanent disability noted involved a limitation of motion in the finger from a normal SO degrees to only 35 degrees. A disability of SO percent sustained to the finger resulted in an estimated three percent permanent disability to the body as a whole. For an indefinite period of time inconvenience and annoyance will result from the limited use of the finger. The pain and suffering endured were considerable. Approximately two hours elapsed before treatment could be had. Another hour-and-a-half was taken for an operation. Pain thereafter continued for 10 days or more. Due to the injuries and the pain and suffering, plaintiff was unable to perform the duties of his employment for a period of two weeks. He was able to perform only a part of his duties during a period of 60 days.
An award for personal injuries must of necessity be predicated upon the facts of each particular case. In giving consideration to the facts of the instant case, we have concluded that an award of $1,500.-00 will afford plaintiff adequate compensation for the injuries and disabilities sustained, as well as the pain, suffering, and inconvenience endured. However, because of the accidental injuries, medical expenses in the sum of $327.72 were incurred. This expense, as well as compensation in the sum of $370.00, was paid by the compensation insurance carrier. It should, of course, be reimbursed.
Therefore, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now Ordered, Adjudged, and Decreed there be judgment herein in favor of plaintiff Thurman E. Smith against the defendant, Indiana Lumbermens Mutual Insurance Company, for the full sum of $1,-827.72, with five percent per annum interest thereon from judicial demand until paid, and for all costs; and that, out of plaintiff’s award, as herein decreed, plaintiff Home Indemnity Company be reimbursed the sum of $697.72, with five percent per annum interest thereon from judicial demand until paid.
Reversed and rendered.