Clifford O. ELLIS and Doris Ellis, Plaintiffs-Appellees Cross-Appellants,

v.

CHEVRON U. S. A. INC., Defendant-Third-Party Plaintiff-Appellant Cross-Appellee.

AM–VAC, WELDING CO., INC., Defendant-Cross-Appellee,

v.

HOUMA WELDERS, INC., Et Al., Third-Party-Defendants Cross-Appellees.

No. 80–3648

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Unit A

July 8, 1981.

Lloyd C. Melancon, New Orleans, La., for defendant-third-party plaintiff-appellant, cross-appellee.

Nick F. Noriea, Jr., New Orleans, La., for Ellis.

J. Mark Graham, Houma, La., for Houma Welders.

Before CHARLES CLARK, REAVLEY and JERRE S. WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Decedent, Michael L. Ellis, was killed while working on a stationary drilling plat-

form in the Gulf of Mexico more than three miles off the coast of Louisiana. This action was brought by his surviving parents under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. Asserted applicability also of diversity jurisdiction does not lie. *Aymond v. Texaco, Inc.*, 554 F.2d 206, 211 (5th Cir. 1977).

Michael Ellis was working as an employee of Houma Welders, Inc. on the platform owned by defendant Chevron. Houma had been hired as an independent contractor to reduce the size of the header unit on the drilling platform. The unit had been installed in the early part of August 1976. Chevron had found the header system was too large so it had hired Houma to reduce its size, and Houma began work around October 11, 1976, approximately two months after the completion of the original job.

In the course of carrying out the contracted work a small crew of employees of Houma, including Ellis, were engaged in removing heavy valves from the header system. These valves were located approximately five feet off the floor of the platform and because of their weight had to be lowered by a pulley system.

On October 12, 1976, the crew undertook to remove the first valve. The valve was secured by a cable on a pulley or block and tackle system by another employee while Ellis removed the bolts. When the bolts had been removed the valve remained stuck. As he was shaking it free, it suddenly came loose and Ellis lost his balance and fell backward holding the valve. This movement of the valve caused the cable in the pulley system to shift its normal position and strike and dislodge a heavy 12 x 12 timber about ten feet long which was lying above the valve on the structure of the platform. This large piece of timber, estimated to weigh more than 200 pounds, fell on top of Ellis and crushed him, causing his death.

The evidence showed that the timber which fell and killed Ellis was a shipping brace which had been used in bringing to the barge the original header system components which had been installed in early August. It belonged to Chevron and had simply been left on the structure at this point without being secured in any way and without serving any useful purpose.

On these facts the jury found that Chevron was solely responsible for the accidental death of Ellis. Ellis was found not to have been negligent nor to have assumed the risk. Houma Welding also was found not to have been negligent. Judgment was rendered on behalf of plaintiffs Clifford Ellis and Doris Ellis in the sum of $167,043.40 together with seven percent interest from the date of judicial demand. Later the district court revised its judgment to provide for interest only from the date of judgment. Chevron's demand for defense and indemnity against Houma Welders and its insurers was dismissed.

Chevron appeals, claiming the district court was in error in refusing to direct a verdict in its favor and denying post trial motions for a new trial and for judgment notwithstanding the verdict. Chevron first challenges the sufficiency of the evidence to uphold the verdict of the jury. It asserts that the district court erred in not directing a verdict in its favor and in denying motions for a new trial or for judgment n. o. v.

The standards under which the denial of such motions is to be reviewed is well established in this court. Although Chevron attempted to develop a distinction between the standard for granting a motion for directed verdict and the standard for granting a motion for a judgment n. o. v., *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969, en banc), establishes the law of this Circuit. On p. 374 that standard is stated:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in

favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

This standard has been confirmed as recently as *Brown v. Bullard Indep. School Dist.*, 640 F.2d 651 (5th Cir. 1981).

■ It is also established that a lower court's denial of the motion for a new trial should be tested by an "abuse of discretion" standard. *Croce v. Bromley Corp.*, 623 F.2d 1084 (5th Cir. 1980); *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360 (5th Cir. 1980).

■ A review of this record reveals clearly that there is substantial evidence supporting plaintiffs' contentions and that this evidence is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment could properly draw the conclusions reached by the jury. Ellis was killed by a large heavy timber which fell on him. The timber had no utilitarian value at all. It had simply been left by its owner, Chevron, on its platform from an earlier installation. There had been no attempt to stabilize it or tie it down or safeguard those who might be hurt by its falling. Further, it was caused to fall by being brushed by the cable of a proper block and tackle or pulley system being used for a proper purpose by its contractor. The record also reveals that Chevron knew that the timber remained there and knew that these workmen of Houma Welding would be working right by it. There simply is no foundation at all to disturb the jury verdict finding Chevron negligent in this case.

■ Chevron further claims that the deceased was guilty of contributory negligence or had assumed the risk. The record cannot establish one way or the other the extent to which the deceased had knowledge of the loose heavy piece of timber. It obviously was not part of his work or what he was supposed to deal with and yet it was nearby. It cannot be said that the failure to find negligence on his part was in error on the ground he should have been more aware of the surroundings, where he did not normally work, and in an environment which was strange to him and most familiar to defendant Chevron. The same factors militate against finding an assumption of risk by him which would justify upsetting the verdict of the jury.

Appellant also contends that it cannot be held liable for the acts or omissions of an independent contractor, in this case decedent's employer, Houma Welding. It relies upon *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir. 1979). In that case Chevron, which had contracted out drilling work (running casing) was found to have no duty to see that the independent contractors performed their obligations in a safe manner and that there was no "peculiar unreasonable risk of physical harm." 608 F.2d at 175, quoting Restatement (Second) Torts § 413 (1965), which would require Chevron to take special precautions.

■ *McCormack* does not control this case. In this case Chevron itself had created the unsafe situation capable of resulting in physical harm. It is not being held liable for any act or omission of Houma. Louisiana law is the applicable law by reason of the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(a)(2)(A). The OCSLA adopts the relevant state law as the law of the United States. In *Smith v. Indiana Lumbermens Mutual Ins. Co.*, 175 So.2d 414 (La.Ct.App.1965), *cert. denied*, 176 So.2d 146 (La.Sup.Ct.1965), the court said that "while one who employs an independent contractor escapes liability for the negligence of such contractor, he is nevertheless answerable for his own negligence." 175 So.2d at 416. Further, Article 2315 of LSA–Civil Code "imposes[s] upon a property owner the duty, owed to all persons rightfully on his property, to discover all reasonably discoverable defects on his prop-

erty and either to warn the invitee or correct them; breach of this duty is regarded as negligence." *McIlwain v. Placid Oil Co.*, 472 F.2d 248, 250 (5th Cir. 1973), *cert. denied*, 412 U.S. 923, 93 S.Ct. 2734, 37 L.Ed.2d 150 (1973). Beyond cavil, there was sufficient evidence to go to the jury in this case that Chevron itself was negligent in leaving this unused heavy and dangerous timber unsecured on the structure where it could be dislodged and injure employees working nearby.

■ A final issue is raised on cross-appeal. The district court awarded prejudgment interest. Then it revised its judgment to award interest only from the date of judgment. *Aymond v. Texaco, Inc.*, 554 F.2d 206 (5th Cir. 1977), has held that 28 U.S.C. § 1961 governs the award of interest in suits brought under the Outer Continental Shelf Lands Act. Section 1961 provides that interest will be calculated "from the date of the entry of judgment." This Circuit has held, however, that the language of § 1961 does not preclude the awarding of prejudgment interest, stating that "other principles of law" may govern the award of prejudgment interest. *Illinois Central R. Co. v. Texas Eastern Transmission Corp.*, 551 F.2d 943, 944 (5th Cir. 1977). The decisions of this court allowing such prejudgment interest under § 1961 thus far involve situations other than cases brought under the OCSLA. The general rule of this Circuit is that the award of prejudgment interest is in the discretion of the court. *Payne v. Panama Canal Co.*, 607 F.2d 155, 166 (5th Cir. 1979).

The district court made no explanation as to why it revised the judgment eliminating the prejudgment interest award. But the record reveals that the issue was fully raised and briefed by the parties before the court. The district court was not only aware of the statutory provision in § 1961, but it was made clearly aware of the principle of the *Illinois Central* case that prejudgment interest can be awarded on other principles of law. Since the district court was aware that it could have left intact its award of prejudgment interest if it found

"other principles of law" which justified the award but chose instead to amend the award to allow interest only after judgment, it properly exercised its discretion. In two leading cases before this court involving injury claims under the OCSLA, decisions of the district court granting interest only after judgment were affirmed. *Aymon v. Texaco, Inc.*, 554 F.2d 206 (5th Cir. 1977); *Berry v. Sladco, Inc.*, 495 F.2d 523 (5th Cir. 1974).

The district court is affirmed both with respect to its judgment holding appellant Chevron solely liable for the death of plaintiffs' decedent, and with respect to the judgment which awarded interest commencing on the date of judgment.

AFFIRMED.