Mary OLSEN, Etc., Christine W. Carvin, Etc., Gordon Davis Wallace and Argonaut Insurance Company, Plaintiffs-Appellees,

v.

SHELL OIL COMPANY, Defendant-Appellant-Appellee,

v.

TELEDYNE MOVIBLE OFFSHORE, Defendant-Appellant.

No. 82–3363.

United States Court of Appeals, Fifth Circuit.

July 5, 1983.

Rehearing and Rehearing En Banc Denied Sept. 26, 1983.

John O. Charrier, Jr., Robert T. Lemon, II, New Orleans, La., for defendant-appellant-appellee.

W.K. Christovich, New Orleans, La., for Teledyne, Pacific & Movible.

William P. Rutledge, Lafayette, La., for Olsen, Carvin & Wallace.

Joel L. Borrello, New Orleans, La., for Argonaut Ins.

Before GEE, REAVLEY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On May 6, 1970, a hot water heater exploded aboard a fixed drilling platform in the Gulf of Mexico, killing three workers and injuring six. There followed these cases, which are now appearing before us for the third time. *See Olsen v. Shell Oil Co.,* 561 F.2d 1178 (5th Cir.1977) (*Olsen I*); *Olsen v. Shell Oil Co.,* 595 F.2d 1099 (5th Cir.1979) (*Olsen II*). Following the remand in *Olsen II,* the district court entered a judgment adopting and modifying a special master's recommendations and awarding damages to plaintiffs Mary Olsen, Christine Carvin, Gordon Wallace, and Argonaut Insurance Co. Defendant Shell Oil Co. and third-party defendant Teledyne Movible Offshore now appeal. Concluding that none of their challenges to the district court's award of damages has merit, we affirm the carefully considered judgment below.

*Facts and Procedural History*

The facts are ably summarized in Judge Fay's earlier opinion. *Olsen I,* 561 F.2d at

1180–81. We repeat here only for the context of these appeals.

Shell Oil Co. owned the drilling platform fixed ninety miles off the coast of Louisiana. At the time of the accident a contractor, Teledyne Movible Offshore, was drilling from the platform. Movible Offshore had installed a movable drilling rig on the platform and modular living quarters for its employees. The living quarters, which included bathroom and galley facilities, were equipped with two electric hot water heaters.

The explosion, on May 6, 1970, of one of the hot water heaters caused the deaths and injuries to Movible Offshore's employees. It was later discovered that an unsuitable valve in the water heater had allowed pressure to build up, causing the explosion. An insurance company inspector had recommended one type of valve, but Movible Offshore had ordered and installed another.

Because the accident occurred on a fixed platform in the Gulf of Mexico, the provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331–1356, govern. The OCSLA provides that with respect to the disability or death of an employee engaged in natural resource mining or exploration activity on the outer Continental Shelf, compensation shall be payable under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, 43 U.S.C. § 1333(b).[1] After the accident, Movible Offshore's insurer, Argonaut Insurance Co., paid benefits to the personal representatives and injured survivors under the LHWCA. Because the LHWCA limits the employer's liability to compensation or benefits under the Act, 33 U.S.C. § 933(i), the search then began for a more accessible purse.

The first three suits were brought by Mary Olsen and Christine Carvin, two widows, and by Gordon Wallace, an injured employee. Defendants included Shell, manufacturers and sellers of the hot water heater and some of its components, and the builder of the living quarters. Argonaut Insurance Co. intervened in all three suits

and also filed its own suit in an effort to recover amounts paid and to be paid in compensation to other employees or their representatives. In all four suits Shell filed a third-party complaint against Movible Offshore for indemnity.

After exhaustive proceedings, the trial judge entered his opinion with respect to liability in these consolidated cases. He acquitted all parties of negligence except Movible Offshore. He also rejected the two theories of strict liability asserted against Shell. A judgment in favor of all defendants followed.

On appeal, we affirmed the district court's ruling that plaintiffs had no right to recover from Shell for violations of certain regulations issued by the Secretary of the Interior pursuant to the authority granted to him by OCSLA, because the OCSLA provided neither an express nor an implied right of action. *Olsen I*, 561 F.2d at 1181–1190. Plaintiffs' second theory of strict liability was based on Article 2322 of the Louisiana Civil Code, which provides:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is a result of a vice in its original construction.

In the absence of a controlling precedent of the Louisiana Supreme Court, we were unable to decide whether Shell could be held liable under Article 2322. We therefore certified the question to the Louisiana Supreme Court, *Olsen I*, 561 F.2d at 1194, which held that Shell was strictly liable. *Olsen v. Shell Oil Co.*, 365 So.2d 1285 (La. 1977).

After the cases had been returned to us, we resolved the remaining issues on appeal. *Olsen II*, 595 F.2d 1099. We upheld the trial judge's determination that Movible Offshore was contractually bound to indemnify Shell for any liability incurred through Movible's negligence. *Id.* at 1103–1104. We affirmed the finding that Movible had been negligent. *Id.* at 1104. And we affirmed the trial judge's exoneration of the

---

1. Before 1978, the provision in question was § 1333(c).

manufacturer of the valve that was installed, the insurance company whose inspector had recommended the valve that was not installed, and the manufacturers of certain other components of the water heater. *Id.* at 1104–1105. Finally, we held that Argonaut Insurance Co. had a right to proceed against Shell although no formal compensation award had been entered. *Id.* at 1105–1106.

On remand the damage issues were tried to a magistrate acting as special master. *See* Fed.R.Civ.P. 53. He entered proposed findings and recommendations. The district court then filed an opinion adopting the findings and recommendations with certain modifications. It entered judgment as follows:

1. Shell was ordered to pay $771,487.67 to Carvin, $16,000 to Olsen, and $88,092.02 to Wallace, of which awards Argonaut was to receive $39,674.72, $16,000, and $8,750.91 respectively;

2. Shell was ordered to pay Argonaut a sum equal to the compensation benefits and medical expenses it had paid on account of the deaths and injuries of the other Movible Offshore employees;

3. Shell was ordered to assume payment of any compensation benefits and medical expenses that Argonaut would have to pay in the future;

4. Movible Offshore was ordered to indemnify Shell for all the above amounts, and for its attorneys' fees and costs of defense.

In addition, the district court ordered prejudgment interest to be paid on the awards to all plaintiffs. This appeal by Shell and Movible Offshore followed.

### The OCSLA

We preface our review of error claimed by Shell and Movible with a reference to the underlying substantive law. The OCSLA provides:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary ..., the civil and criminal laws of each adjacent State ...

are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ...

43 U.S.C. § 1333(a)(2)(A).

The OCSLA, as the Supreme Court made clear in *Rodrigue v. Aetna Casualty Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), "deliberately eschewed the application of admiralty principles to these novel structures" and instead applied "federal law, supplemented by state law of the adjacent State, ... to these artificial islands as though they were federal enclaves in an upland State." *Id.* at 355, 89 S.Ct. at 1837. The Court continued:

> Since federal law, because of its limited function in a federal system, might be inadequate to cope with the full range of potential legal problems, the Act supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.' Under § 4, the adjacent State's laws were made 'the law of the United States for [the relevant subsoil and seabed] and artificial islands and fixed structures erected thereon,' but only to 'the extent that they are applicable and not inconsistent with ... other federal laws.'

*Id.* at 357, 89 S.Ct. at 1838. In *Rodrigue,* the Court held that the Louisiana wrongful death statute, not the Death on the High Seas Act, furnished the remedy for two tortious deaths occurring on fixed offshore oil rigs.

In *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Court developed the teaching of *Rodrigue,* holding that the Louisiana statute of limitations governed personal injury actions under the OCSLA that were based on Louisiana law: "Congress made clear provision for filling in the 'gaps' in federal law; it did not intend that federal courts fill in those 'gaps' themselves by creating new federal common law." *Id.* 404 U.S. at 104, 92 S.Ct. at 354. The Court added:

If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court. A state time limitation is coordinated with the substance of the remedy and is no less applicable under the Lands Act.

*Id.* at 103, 89 S.Ct. at 353.

The implication of *Rodrigue* and *Huson* is that whenever an action is based on "surrogate" Louisiana law,[2] as are the claims of Olsen, Carvin, and Wallace, Louisiana law provides all aspects of the remedy. More problematical is the task of classifying the independent action brought by Argonaut. In one sense, Argonaut's claim against Shell is derived from Louisiana law, in that Argonaut seeks to hold Shell liable for violating Article 2322. In another sense, Argonaut is proceeding under federal law, because its *federal* obligation to pay compensation benefits to the victims or their survivors is a necessary element of its claim against Shell. Not surprisingly, we are not the first to confront this puzzlement. Another panel in a separate case from this same explosion has concluded that Argonaut's claim against Shell is for "unjust enrichment" under Louisiana law as incorporated into federal law by the OCSLA, rather than a strictly federal claim.

Raymond Louviere, a victim, filed suit in 1973 against the same array of defendants now before us. On defendants' plea of prescription, alleging that Louviere's claim for personal injuries was barred because the one-year prescriptive period for tort actions in Louisiana had passed, the district court dismissed the suit.

We reversed and remanded. The issue on appeal was whether Argonaut's independent action seeking reimbursement for compensation benefits (the fourth case involved in *this* appeal) interrupted the period of prescription. Defendants argued that it did not, because it " 'does not state any right or cause of action whatsoever.' " *Louviere v.*

*Shell Oil Co.,* 509 F.2d 278, 281 (5th Cir. 1975), *cert. denied,* 423 U.S. 1078, 96 S.Ct. 867, 47 L.Ed.2d 90 (1976) (quoting *Callender v. Merks,* 185 La. 948, 171 So. 86, 87 (La. 1936)). We disagreed, holding first that § 33 of the LHWCA, 33 U.S.C. § 933, does not provide the sole remedy of an employer or its insurer against third persons, 509 F.2d at 282–284, and second that Argonaut's complaint alleged facts sufficient to support a claim under the *Louisiana* law of unjust enrichment. *Id.* at 284–285. Thus, *Louviere* stands for the proposition that surrogate Louisiana law, not federal law, provides the basis for Argonaut's recovery of compensation benefits and medical expenses from Shell. We turn now to the error claimed by Shell and Movible Offshore.

*Recovery in Excess of Tort Damages*

Shell and Movible Offshore contend that the district court erred in awarding as damages an amount in excess of their maximum exposure in direct tort liability to Olsen, Carvin, Wallace and the other employees or their representatives. The district court in fact ordered Shell to compensate Argonaut for all amounts it had paid out in LHWCA benefits. According to Shell and Movible Offshore, the LHWCA contemplates one damage award against a culpable third person and limits that award to the amount the employee or his representative would be entitled to recover under applicable tort law. The district court's damage award to Argonaut, they contend, violated this principle of the LHWCA.

As a gloss on the language of § 33 of the LHWCA, this argument is not without force. Section 33(b) provides that acceptance of compensation under an award shall operate as an assignment to the employer of the employee's rights of action against third persons. Section 33(e) sets forth how "[a]ny amount recovered by such employer on account of such assignment" shall be distributed. Shell and Movible Offshore ar-

---

**2.** We borrow the term from Judge Brown's opinion in *Law v. Sea Drilling Corp.,* 510 F.2d 242, 244 (5th Cir.1975). The law governing *all* OCSLA cases is of course federal; the question is whether state law has been *incorporated* as federal law.

gue that these subsections by implication limit an employer or insurer's potential recovery against third persons on account of a compensation award to the amount it could recover *by assignment.*

Contrary to Argonaut's suggestion, we do not believe that *Louviere v. Shell Oil Co.,* 509 F.2d 278 (5th Cir.1975), has fully resolved this issue against Shell and Movible Offshore. In *Louviere,* we held only that § 33 was not the exclusive remedy of an employer or insurer against a third person. *Id.* at 282–84. Specifically, we held that Argonaut could sue Shell and the other defendants even though no formal compensation award had been entered and it was not a statutory assignee. *See also Pallas Shipping Agency, Ltd. v. Duris,* —— U.S. ——, ——, 103 S.Ct. 1991, 1996, 76 L.Ed.2d 120 (1983). We did not decide, however, whether Argonaut could recover an amount *in excess of* the potential tort recovery of the victims or their survivors.

■ Shell and Movible Offshore's argument is, however, foreclosed by the Supreme Court's decision in *Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 385 (1969). There the Court held that a stevedore that had paid compensation benefits to a widow under the LHWCA was not limited by the Act to recovering from the shipowner the amount recoverable by the widow in a direct action against the shipowner. The situation in *Burnside,* as the Court explained, was as follows:

> Normally the stevedoring contractor is content with its remedy of subrogation to the rights of the deceased longshoreman's representative against whatever third party may be liable for the death, usually the shipowner. In this case, however, the applicable Illinois Wrongful Death Act

limited the amount recoverable by the decedent's representative to $30,000, far short of Marine Terminals' potential liability of $70,000.

*Id.* at 410, 89 S.Ct. at 1148. The Court concluded, "[W]e can perceive no reason why Congress would have intended so to curtail the stevedoring contractor's rights against the shipowner." *Id.* at 413, 89 S.Ct. at 1149.[3] Argonaut's situation is comparable.[4] It has sought to recover from Shell an amount greater than what the victims or their representatives are entitled to recover as a matter of state tort law. Bound by the Supreme Court's decision in *Burnside,* we hold that the LHWCA is no bar. *See also Pallas Shipping Agency, Ltd. v. Duris,* 51 U.S.L.W. at 4583.

Shell and Movible Offshore identify only one arguably apposite case. In *Hinson v. SS Paros,* 461 F.Supp. 219 (S.D.Tex.1978), where a longshoreman fell to his death as a result of negligence on the part of the shipowners, the court denied the insurer recovery of the total projected compensation benefits and limited recovery to the damages for which the shipowners would be liable to the employer's family in an action brought by them. Because the longshoreman was sixty-six years old at the time of his death, the expected compensation benefits far exceeded the wrongful death recovery, as in *Burnside* and the present case. 461 F.Supp. at 222–223. The court reasoned that the 1972 amendments to the LHWCA, in particular the addition of § 905(b), "modified *Burnside* to the extent that employers or their compensation insurance carriers are limited to the recovery of compensation benefits paid, as provided in § 933, and that in no instance can they recover more than the injured worker or his beneficiaries." *Id.* at 223. The pertinent part of § 905(b) reads as follows:

---

**3.** In *Burnside* the Court indicated that the stevedore's right of indemnity, if available, would be under federal maritime law. 394 U.S. at 416–417, 420 n. 23, 89 S.Ct. at 1151–1153 n. 23. In the context of the OCSLA, we recognized that the insurer's remedy was under surrogate state law. *Louviere,* 509 F.2d at 284–285.

**4.** The district court awarded Mary Olsen only $16,000 because she had been divorced from the decedent at the time of the accident and he had been providing little support or comfort to his former family. Argonaut's compensation obligation to the Olsen family was much greater than this amount.

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title. . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. *The remedy provided in this subsection shall be exclusive of all other remedies against the vessel* except remedies available under this chapter.

33 U.S.C. § 905(b) (emphasis added). In *Hinson* the court interpreted § 905(b) not only as abolishing the *Sieracki* action for breach of warranty of seaworthiness, but also as limiting the vessel's liability to the amount that could be recovered in an action under § 933.

■ Whatever its meaning, however, § 905(b) only applies to *vessels*. It does not limit the liability of other "third persons" who were never bound by the *Sieracki* doctrine to begin with. Shell's fixed oil drilling platform, like the helicopter in *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337, 341 n. 5 (5th Cir.1982), simply is not a "vessel" within the meaning of the LHWCA. *See Longmire v. Sea Drilling Corp.,* 610 F.2d 1342, 1348 (5th Cir.1980); *Callahan v. Fluor Ocean Services, Inc.,* 482 F.2d 1350, 1351 (5th Cir.1973). The 1972 LHWCA amendments thus cannot affect the availability of a recovery in excess of tort damages against Shell.[5]

### Inflation

Movible Offshore argues that the district court erred in following the Louisiana law on inflationary factors in damage awards, *see Edwards v. Sims,* 294 So.2d 611, 617 (La.App.1974); *Murphy v. Georgia-Pacific Corp.,* 628 F.2d 862, 869 (5th Cir.1980) (diversity case applying Louisiana law), rather than "federal" law. As noted above, the claims of Olsen, Carvin, Wallace, and Argonaut derive from *Louisiana* law. *Huson* teaches that when a state remedy is applicable through the OCSLA, all aspects of that remedy are applicable, except for "mere 'housekeeping rules.'" 404 U.S. at 103 n. 6, 92 S.Ct. at 354 n. 6. "The federal borrowing of state law under the Lands Act is all-inclusive . . ." *Bonner v. Chevron U.S.A.,* 668 F.2d 817, 819 (5th Cir.1982).

We have not yet decided the precise issue of whether the state law on inflation governs in an OCSLA action based on surrogate state law. Yet in *Evans v. Chevron Oil Co.,* 438 F.Supp. 1097, 1104 (E.D.La. 1977), *aff'd without opinion,* 616 F.2d 565, 566 (5th Cir.1980), the district court, citing *Rodrigue,* employed the Louisiana rule, which allows the decreasing purchasing power of the dollar due to inflation to be considered, in making an OCSLA damage award.

On the other hand, in the recent case of *Gulf Offshore Co. v. Mobile Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), the Supreme Court was confronted with the somewhat analogous question of whether *Norfolk & Western R. Co. v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the federal rule requiring FELA juries to be instructed on the nontaxability of personal injury awards, applies to an OCSLA personal injury action based on Louisiana law. Instead of deciding this question, the Supreme Court remanded the case to the Texas Court of Civil Appeals for a determination of what the Louisiana rule was, and (assuming an inconsistency between the two) to decide "whether *Liepelt* displaces the state rule in an OCSLA case." *Id.* 453 U.S. at 488, 101 S.Ct. at 2880. That the Supreme Court would remand rather

---

5. In a somewhat related and spirited argument, Shell also contends that the district court erred in requiring it to assume Argonaut's future compensation liabilities. We disagree. Contrary to Shell's protestations, the district court's order does not force it "to enter the business of an American casualty insurance company." Shell can pay a lump sum, which is what it wants to do, to a carrier in return for its assumption of the obligation to issue the weekly compensation checks. The district court's order was a pragmatic gesture to judicial economy.

than answering the question itself suggests that the answer was less than self-evident.

On remand, 628 S.W.2d 171 (Tex.Civ.App. —Houston 1982, writ ref. n.r.e.), *cert. denied,* —— U.S. ——, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982), the Texas Court of Civil Appeals held that state law, although inconsistent with federal law, had to be followed:

> In the instant case OCSLA has borrowed a remedy provided by the state law of Louisiana: a cause of action for damages for personal injuries. We think that when OCSLA borrowed the remedy, it borrowed the remedy in its entirety. In other words, OCSLA made the entire state cause of action *applicable* federal law, enforceable as federal law. This conclusion leads to our holding that OCS-LA has borrowed from the law of Louisiana and has made applicable federal law in this case the Louisiana law which makes discretionary the giving of a jury instruction that damage awards are not subject to income taxation.

*Id.* at 174 (emphasis in original).

■ We think the Texas Court of Civil Appeals reached the result required by *Rodrigue* and *Huson.* Likewise, we believe that *Rodrigue* and *Huson* dictate that the state rule on inflation be followed here. Pretending that inflation does not exist only disconnects the law from reality. Enough fairy tales float into trials without our adding a judicial spook. But our view of the wisdom of a rule is not here the index of its application. That we view the rule as integral to a tort system is important, however. Accounting for inflation has a direct and appreciable impact on the dollar amount of a plaintiff's recovery; far from being a mere "housekeeping rule," it is at least as much an aspect of the state remedy as the state statute of limitations. Indeed, the Supreme Court's quotation in *Huson* from a leading case on the *Erie* doctrine points toward choice of law principles analogous to those prevailing in diversity cases, even though the Court cautioned in the preceding footnote that "[t]his is not to imply that a federal court adjudicating a claim under state law as absorbed in the Lands Act must function as it would in a diversity case." 404 U.S. at 103 n. 5 & n. 6, 92 S.Ct. at 353 n. 5. Further, to the extent OCSLA cases travel parallel to the more frequently trod paths of diversity cases, courts and counsel may with greater sureness engage in the task of predicting the choice of law. Finally, observing the essentially unitary character of these state and federal remedies enhances the probability of each system's achieving its risk-distributive goals.

*Prejudgment Interest*

Both Shell and Movible Offshore contend that the district court should not have awarded prejudgment interest, citing *Berry v. Sladco, Inc.,* 495 F.2d 523 (5th Cir.1974); *Aymond v. Texaco, Inc.,* 554 F.2d 206 (5th Cir.1977), and *Musial v. A & A Boats, Inc.,* 696 F.2d 1149 (5th Cir.1983). Plaintiffs meanwhile argue that such an award is expressly permitted by *Ellis v. Chevron U.S.A., Inc.,* 650 F.2d 94 (5th Cir.1981). We have the task of seeking common ground for these cases.

In *Berry,* a personal injury action under the OCSLA, we upheld a district court's denial of prejudgment interest:

> The tenets of *Rodrigue* make firm the conclusion that 28 U.S.C. § 1961 controls the applicable time period for determining interest in this case. Section 1961 provides in relevant part that, 'interest *shall* be calculated from the date of the entry of the judgment, at the rate allowed by State law.' (emphasis added) This is a positive statement of federal law, obligatory in its terms, and as such is controlling in an action brought under the Lands Act.

495 F.2d at 528. In *Aymond* we followed *Berry* in affirming a denial of prejudgment interest, noting that "this action was in federal court under the Lands Act, not the diversity statute, in a manner indistinguishable from the *Berry* action, and, as in *Berry,* there are no gaps in the federal law on computation of interest to be filled by the Louisiana interest statute." 554 F.2d at 212. Recently, in *Musial,* we applied both

Berry and Aymond in holding that an OCS-LA plaintiff's claim for prejudgment interest on his LHWCA award had been properly rejected by the district court:

> An award of interest in a suit brought under OCSLA is governed by federal law. *See Berry v. Sladco, Inc.,* 495 F.2d 523, 528 (5th Cir.1974). Hence, pursuant to 28 U.S.C. § 1961 'such interest shall be calculated from the date of entry of the judgment, at the rate allowed by state law.' *Aymond v. Texaco, Inc.,* 554 F.2d 206, 211 (5th Cir.1977). The trial court's award of interest is, therefore, affirmed.

*Id.* 696 F.2d at 1154.

By contrast, in *Ellis,* an OCSLA wrongful death case, we upheld a denial of prejudgment interest once again, but only on the ground that the district court had "properly exercised its discretion." 650 F.2d at 98. The panel there read 28 U.S.C. § 1961 as mandating postjudgment interest but also permitting prejudgment interest. Thus, it concluded that the district court "could have left intact its award of prejudgment interest if it found 'other principles of law' which justified the award . . ." *Id.* (quoting *Illinois Central Railroad Co. v. Texas Eastern Transmission Corp.,* 551 F.2d 943, 944 (5th Cir.1977)).

We think *Ellis* is the better view. *Ellis* reads the federal interest statute as permissive on the matter of prejudgment interest; *Berry* and *Aymond* read it as prohibitory. The problem with the latter reading is that 28 U.S.C. § 1961 governs all civil actions in federal district courts, *Gele v. Wilson,* 616 F.2d 146, 148 (5th Cir.1980), except diversity cases, *Degelos Bros. Grain Corp. v. Fireman's Fund Insurance Co. of Texas,* 498 F.2d 1238, 1239 (5th Cir.1974), yet prejudgment interest has frequently been awarded in nondiversity cases without express statutory authority (for example, suits in the admiralty). Indeed, *Berry* and *Aymond* appear to contravene the almost universal view that "Section 1961 does not by its silence bar the awarding of prejudgment interest . . ." *Bricklayers' Pension Trust Fund v. Taiariol,* 671 F.2d 988, 989 (6th Cir.1982) (citing cases).

■ *Ellis* indicated that an award of prejudgment interest in an OCSLA case might be justified by "other principles of law." We think the Louisiana statute providing for interest from the date of judicial demand, La.Rev.Stat. § 13:4203, is such a principle. Accordingly, we hold that where, as here, a district court awards prejudgment interest to a prevailing OCSLA plaintiff whose remedy is based on surrogate state law, the award should not be disturbed on appeal if supported by that state law.

This holding, we believe, is consistent with the precepts of *Rodrigue* and *Huson.* Prejudgment interest, and inflationary measures, ought to be regarded as integral to each other and to the state law remedy, particularly when the final judgment is being entered, as it is here, more than a decade after the suits were originally filed. *See General Motors Corp. v. Devex Corp.,* —— U.S. ——, —— n. 10, 103 S.Ct. 2058, 2062–2063, 76 L.Ed.2d 211 (1983).[6]

### Recovery for Loss of Love and Affection and for Grief and Anguish

Shell and Movible Offshore also maintain that the district court erred in making awards to Christine Carvin both for loss of love and affection and for grief and anguish. In *Croce v. Bromley Corp.,* 623 F.2d 1084, 1094–1095 (5th Cir.1980), *cert. denied,*

---

**6.** Our choice between the *Berry-Aymond-Musial* line of cases and the *Ellis* case could be argued to be a choice between two sets of dicta. That construction is in our view strained. We prefer to address head on the fact that we have conflicting cases and to state candidly that we have chosen the *Ellis* case.

It has been suggested, in dictum, that a panel faced with conflicting panel decisions must follow "the longer established and more extensive line of precedent." *Washington v. Watkins,* 655 F.2d 1346, 1354 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). If this rule were applied here, we would note that the *Berry-Aymond-Ellis* line of cases contravenes an earlier holding that 28 U.S.C. § 1961 does not address prejudgment interest. *Louisiana & Arkansas Railway Co. v. Export Drum Co.,* 359 F.2d 311, 317 (5th Cir. 1966).

450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), we held that Louisiana law does not permit plaintiffs in a wrongful death action to recover "*separate* monetary awards for loss of love and affection on the one hand and for sorrow and mental anguish on the other" (emphasis in original).

The question here is the separateness of the awards. The special master recommended an award of $290,000 for "loss of love and affection" and an award of $90,000 for "grief and anguish." The trial judge acknowledged that these duplicative awards for a single category of loss constituted error under Louisiana law. However, he concluded that when they were viewed as a single award for loss of society, the $380,000 total was not "clearly erroneous." He therefore approved the entire damage amount.

■ The district court explained that it was "willing to look beyond the labels the master has placed on the awards herein disputed ..." Its intent was clearly to combine the two sums and treat them as its single award for loss of society. We cannot say this sum was excessive. We find no error.

### Death of Cynthia Carvin

■ Finally, Movible Offshore argues that the death of Cynthia Carvin just prior to judgment should have been taken into account in calculating the damages for her father's wrongful death. Assuming that this point was preserved, we nonetheless reject Movible Offshore's claim of error. In *Wakefield v. Government Employees Ins. Co.*, 253 So.2d 667 (La.App.1971), *writ denied*, 255 So.2d 771 (La.1972), the court reasoned:

If the beneficiary has died by the time that the court assesses damages, certainly that fact must be considered in the assessment, because loss of support and other damages can then be actually (rather than fictionally) measured.

*Id.* at 671. In the present case, however, Cynthia Carvin had reached the age of majority at the time of her death, which occurred twelve years after the accident. Given this fact, and the fact that Cynthia Carvin was only one of six beneficiaries (the others were her four siblings and her mother), any reduction in the district court's damage award would have been minimal. We do not believe the Louisiana Supreme Court would require recomputation of a wrongful death recovery under these circumstances. Here time would feed upon time if we were to find that because we have taken so long that we must take even longer. Somewhere in that process we will have lost sight of the idea that no decision is a decision, if in the past thirteen years we have not done so already.[7]

Lest our silence be taken as expression of other than frustration we pause to note the consumption of thirteen years to decide these cases, to date. It is not a pleasing story for counsel, court, or the Congress. This is too long for widows and children. Without attempting to assess blame for all the systemic cracks into which these cases fell, the snail's pace was not fair. At some point it ceases to be justice.

In sum, we agree with the district court's interpretations of the Longshoremen's and Harbor Workers' Compensation Act, the Outer Continental Shelf Lands Act, and Louisiana law. We affirm the judgment

---

7. Two additional arguments have been raised on appeal by Movible Offshore. Movible contends that the district court erred in ordering it to indemnify Shell not only for the judgment against it but also for its attorneys' fees. In *Olsen II*, however, we held, "The trial court was correct in finding that the contract required Movible to indemnify Shell for attorney's fees and costs." 595 F.2d at 1104. Thus, Movible's appeal of this point challenges the law of the case. We decline to reconsider our prior holding.

Movible also argues that a waiver of subrogation in its drilling contract with Shell prohibits its Argonaut from recovering from Shell. The problems with this argument are threefold. For one thing, this contention does not appear to have been presented below. Moreover, a waiver in Movible's contract with Shell would not bind Argonaut, a nonparty. Finally, in *Louviere* this court recognized that Argonaut's right to recovery was based on unjust enrichment, not contractual subrogation. 509 F.2d at 284–85.

below, with the hope that these cases will now be ending their thirteen-year odyssey.

AFFIRMED.