Larry Wayne McNEESE,
Plaintiff-Appellee Cross
Appellant,

American Home Assurance Company,
Intervenor-Appellee Cross Appellant,

v.

READING AND BATES DRILLING
COMPANY, et al., Defendants,

Red Fox Industries, Inc.,
Defendant-Appellant
Cross Appellee.

No. 84–3037.

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1985.

Christovich & Kearney, Lawrence J. Ernst, New Orleans, La., for defendant-appellant cross appellee.

Leonard A. Radlauer, New Orleans, La., for plaintiff-appellee cross appellant Larry McNeese.

Donald J. Anzelmo, New Orleans, La., for intervenor-appellee cross appellant American Home Assurance Co.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

PER CURIAM:

Larry Wayne McNeese was injured while working on a fixed platform located in the Gulf of Mexico, and brought this products liability suit alleging jurisdiction under the Outer Continental Shelf Lands Act (OCS-LA), 43 U.S.C. § 1331–1356. After a three-day trial, the jury awarded McNeese $450,-000 in damages and the defendant, Red Fox Industries, appealed. It argues here that it is entitled to a new trial because of an erroneous jury instruction and various erroneous evidentiary rulings. McNeese has cross-appealed, urging that he is entitled to prejudgment interest. We have reviewed the arguments of the parties and affirm the district court.

## I.

Larry Wayne McNeese (McNeese) was employed by Reading and Bates Drilling Company (Reading) as a roughneck aboard the platform rig LEO M. CLARK located in the Gulf of Mexico off the coast of Texas. The oil platform was built by the appellant Red Fox Industries (RFI) and operated by Tenneco Oil Company (Tenneco). At the time of the incident, McNeese and a co-worker were lowering a "bell nipple" through an opening in the platform floor. A bell nipple is a large casing measuring approximately twenty inches in diameter and is twenty feet or more in length, weighing approximately 3,000 pounds. The bell was being lowered through the rotary opening in the drill floor in order that a welder standing on the catwalk could cut off part of the nipple, and reposition it to match up with the mud-flow line.

The mud-flow line ran parallel to the platform beneath the catwalk. The apparatus was supported by a retractable monorail system which permitted it to be removed if necessary. During the lowering of the bell nipple, the monorail system collapsed, and the flow line fell, striking McNeese. McNeese's leg was broken, and some muscle tissue sheared off as a result of the accident.

McNeese filed suit against RFI, on the theory that the mud-flow line was defectively designed because the plans called for improper bolts to support the mud-flow line, that it was defectively manufactured since a safety line was not installed as required by the plans, and that RFI breached its duty to warn McNeese of the danger. Since the accident occurred on a fixed platform in the Gulf of Mexico, jurisdiction was based on the provisions of the OCSLA. After a three-day trial, the jury awarded McNeese damages of $450,000, finding liability under all three theories alleged. By stipulation, the intervenor, American Home Assurance Company, was reimbursed com-

pensation and medical benefits of $50,275.11 previously paid.

The primary issue raised by RFI is whether the district court erroneously defined a "defectively designed" product in its instructions to the jury, thereby entitling RFI to a new trial. We hold that while the instruction was not the model of clarity, any error resulting from its use under the circumstances of this case was harmless. RFI also alleges that it was unduly prejudiced by several evidentiary rulings made by the district court. We have reviewed the district court's evidentiary rulings and hold that no showing of prejudice or abuse of discretion by the trial court has been made. Finally, McNeese argues on cross-appeal that the district court should have awarded prejudgment interest. We hold that the district court committed no abuse of discretion in denying prejudgment interest.

## II.

■ OCSLA extends the laws of the United States to the subsoil and sea bed of the outer continental shelf, and to the artificial islands and fixed structures built for the discovery, extraction and transportation of minerals. 43 U.S.C. § 1333(a)(1); *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). All law applicable to the outer continental shelf is federal law, but to fill in the substantial "gaps" in the coverage of federal law, OCSLA borrows the applicable and not inconsistent laws of the adjacent states as surrogate federal law. 43 U.S.C. § 1333(a)(2); *Rodrigue v. Aetna Casualty Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Thus, the personal injury action involving events occurring on the shelf is governed by federal law, the content of which is borrowed from the law of the adjacent state, here, Texas. We must, therefore, turn to Texas law to determine whether the jury instructions given by the district court were erroneous.

■ Texas, as do most jurisdictions, recognizes three general theories of recovery under which a manufacturer of a defective product may be held liable under strict liability principles: defective manufacture; defective design; and warning or informational defects. W.C. Powers, Jr., *The Persistence of Fault in Products Liability*, 61 Texas L.Rev. 777 (1983). A product is defectively manufactured when the product as manufactured varies from the manufacturer's specifications and therefore is unintentionally different from other products in the line. *Id. See also Smith v. Borg-Warner Corp.*, 626 F.2d 384 (5th Cir.1980). A product is defectively designed when the product conforms to the manufacturer's specifications, but the risk the product imposes exceeds its utility. *Turner v. General Motors Corp.*, 584 S.W.2d 844 (1979). Finally, warning or informational defects occur when the manufacturer markets the product without supplying adequate warnings as to the dangers associated with using it, as well as when it fails to provide proper instructions on how to avoid such risk. *Gross v. Black & Decker (USA), Inc.*, 695 F.2d 858 (5th Cir.1983).

In *Turner v. General Motors Corp., supra*, a strict liability case involving a design defect, the Texas Supreme Court held that a product is unreasonably dangerous and defective if the danger-in-fact associated with the use of the product outweighs the utility of the product. *See Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344 (5th Cir.1983). The Texas Supreme Court also specifically stated in design-defect cases that the jury instructions should not include either the element of the ordinary consumer or of the prudent manufacturer. *Turner*, 584 S.W.2d at 847.

The definition of "unreasonably dangerous" in the context of a defectively *designed* product, does not necessarily apply in the case of a defectively *manufactured* product. In *Fitzgerald Marine Sales v. Leunes*, 659 S.W.2d 917 (Tex.App.1983), the plaintiff alleged that the steering wheel of his boat, because of flaws in its manufacture, was the cause of his injury. The court stated in this case, that the flaw must render the product "unreasonably dangerous," and instructed the jury that "an un-

reasonably dangerous product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product, with the ordinary knowledge common to the community of such users as to the product's characteristic." *Fitzgerald Marine Sales,* 659 S.W.2d at 919. This case demonstrates that while the ordinary user language is not appropriate in the context of a defectively designed product, it is still applicable in the context of a negligently manufactured product.

In this case the district court instructed the jury that:

[A] product is in a defective condition when it is unreasonably dangerous as designed or manufactured, taking into consideration the utility of the product and the risk involved in its use. It is unreasonably dangerous if it is dangerous to an extent beyond which would be contemplated by the ordinary user, having ordinary knowledge common to the foreseeable class of persons who would normally use the product.

RFI argues that the jury instructions were erroneous because the district court included an element of an ordinary user. RFI characterizes the issue here as one involving solely a design defect, and argues that jury instructions only as enunciated in *Turner* should have been given.

McNeese, on the other hand, argues that where elements of both a defective design and defective manufacture are present, the jury instructions should include both the *Turner* "risk vs. utility" test and the "ordinary user" test. McNeese further argues that *Turner* has not completely abrogated the "ordinary user" test in products liability actions which do not involve design defects, and that any error in the district court's instructions were harmless.

■■■ The test on appeal when there has been a proper objection to the jury instructions is whether, considering the instructions as a whole, the jury was misled or could have misunderstood the issues presented to it. *Coughlin v. Capital Cement Co.,* 571 F.2d 290 (5th Cir.1978). In assessing the jury instructions, the court must also consider the pleadings, evidence and argument of counsel. *Id.* The instructions need not be perfect in every respect, provided that the charge in general correctly instructs the jury, and any injury resulting from the erroneous instruction is harmless. *Kyzar v. Vale Do Ri Doci Navegacai, S.A.,* 464 F.2d 285 (5th Cir.1972).

The district court instructed the jury that a product is "unreasonably dangerous" if the risk of injury exceeds the utility of the product. The court also instructed that a product is "unreasonably dangerous" if it is dangerous to an extent beyond which would be contemplated by the ordinary user.

■■■ Since recovery was sought and special interrogatories were submitted to the jury under the assertions that the mudflow line was defectively designed, defectively manufactured, and contained inadequate warnings, it was proper for the district court to instruct the jury both as to the "risk-utility" and "ordinary user" tests. While the instructions would have been clearer had the district court separated each instruction more distinctly, we find, viewing the instructions as a whole, that any error made was harmless.

### III.

■■■ The appellant next argues that it was prejudiced by several evidentiary rulings made by the district court. In reviewing the district court's rulings on evidentiary matters, we recognize that the district court has wide discretion, and that we will only reverse a district court where there has been a clear abuse of discretion. *Consolidated Grain & Barge Co. v. Marcona Conveyor Corp.,* 716 F.2d 1077 (5th Cir. 1983); *Wright v. Hartford Accident & Indemnity Co.,* 580 F.2d 809 (5th Cir.1978).

■■■ RFI's first evidentiary argument is that the district court erroneously refused to permit it to read to the jury McNeese's response to an interrogatory propounded by a former defendant asking for McNeese's opinion of the possible cause of the accident. McNeese's response to the

interrogatory appeared to be in the nature of alternative pleading, rather than an admission of the cause of the accident, and, as such, the district court did not abuse its discretion in failing to allow the interrogatory and the response to be read to the jury. *See Douglas Equipment, Inc. v. Mack Truck, Inc.*, 471 F.2d 222 (7th Cir. 1972). Additionally, the trial court cured any potential error by affording RFI the opportunity to cross-examine McNeese about the answer to the interrogatory.

Next, RFI argues that the district court erred by refusing to allow Mr. Bailey, the co-worker who was lowering the bell nipple at the time of the accident, to give his opinion as to the cause of the accident. Bailey testified that he did not actually see what caused the flow line to fall. The defendant sought, in the absence of his knowledge, his opinion as to how the accident occurred. The court's refusal to allow him to speculate was certainly no abuse of discretion. *See Perkins v. Volkswagen of America, Inc.*, 596 F.2d 681 (5th Cir.1979).

The appellant's third evidentiary challenge is that the trial court should have admitted the accident report filed with the Coast Guard. The individual whose name appeared on the report, however, denied preparing it, denied signing it, and did not know the source of the information contained in it. The trial court has wide discretion to exclude documents under Rule 803(6) when circumstances indicate that the document may be untrustworthy. *Capital Marine Supply, Inc. v. M/V Roland Thomas, II*, 719 F.2d 104 (5th Cir.1983). We again find that the trial court did not abuse its broad discretion in refusing to admit this document.

RFI's last evidentiary argument is that the district court erred in excluding the testimony of two of its expert witnesses. RFI failed to comply with the district court's pretrial order requiring the parties to exchange written reports of their respective expert witnesses no later than sixty days prior to the pretrial conference. We reject the appellant's arguments and find that the district court did not abuse its discretion by enforcing its local rules and declining to admit the expert testimony of these witnesses.

## IV.

A final issue, raised on cross-appeal, is whether McNeese is entitled to prejudgment interest. The district court awarded interest only from the date of judgment. McNeese argues that under *Ellis v. Chevron USA, Inc.*, 650 F.2d 94 (5th Cir.1981), and *Olsen v. Shell Oil Co.*, 708 F.2d 976 (5th Cir.1983), he is entitled to prejudgment interest.

In *Ellis*, a wrongful death case brought under OCSLA, the district court originally awarded prejudgment interest, but then revised its judgment to award interest only from the date of judgment. On appeal it was argued that 28 U.S.C. § 1961 precluded an award of interest in a case brought under OCSLA. The *Ellis* court stated that the general rule of this circuit is that the award of prejudgment interest is in the discretion of the district court and held that section 1961 did not preclude an award of prejudgment interest if the award was supported by "other principles of law." However, prejudgment interest was not awarded in this case, since the court found that the district court had acted within its discretion in not making the award.

In *Olsen v. Shell Oil Co., supra,* this court again addressed the question of whether prejudgment interest was awardable. There, unlike *Ellis,* the district court had allowed prejudgment interest. The issue on appeal was whether this award was proper. Relying on *Ellis,* this court stated that prejudgment interest could be awarded if justified by "other principles of law," and, noting the applicability of state law as surrogate federal law in OCSLA cases, found the Louisiana statute allowing the award of interest from the date of judicial demand, La.R.S. § 13:4203, to be such an "other principle of law." *Olsen,* 708 F.2d at 984. Accordingly, this court held that where a district court awards prejudgment interest to a prevailing OCSLA plaintiff

whose remedy is based on surrogate state law, the award should not be disturbed on appeal if supported by that state law.[1] *Id.; see also Smith v. Shell Oil Co.,* 746 F.2d 1087 at 1096 (5th Cir.1984).

Since McNeese was working on a platform off the coast of Texas, Texas law applies as surrogate federal law in this case. Texas law, unlike Louisiana law, does not allow the award of prejudgment interest. *State of Texas v. Weller,* 666 S.W.2d 362 (Tex.Ct.App.1984). The "other principle of law" that supported the award of prejudgment interest in *Olsen,* is lacking here. The rationale of *Olsen,* therefore, does not apply to McNeese's claim.

McNeese argues, without specificity, that there are "principles of law" other than a state's statute allowing interest from the date of judicial demand that support his position. We need not look for those other principles of law today (and we do not imply that such other principles exist), because even if the award of prejudgment interest could be supported in this case, McNeese has not persuaded us that the district court abused its discretion in failing to make such an award.

## V.

In sum, we find that any error in the district court's jury instruction was harmless, that the district court did not abuse its wide discretion in its evidentiary rulings, and that McNeese is not entitled to prejudgment interest under the facts of this case. Accordingly, the district court is

AFFIRMED.

---

1. The *Olsen* court recognized that its opinion was inconsistent with *Berry v. Sladco, Inc.,* 495 F.2d 523 (5th Cir.1974); *Aymond v. Texaco, Inc.,* 554 F.2d 206 (5th Cir.1977), and *Musial v. A & A Boats, Inc.,* 696 F.2d 1149 (5th Cir.1983), but adopted the reasoning in *Ellis v. Chevron U.S.A., Inc.,* 650 F.2d 94 (5th Cir.1983). We adopt this court's reasoning in *Olsen* and *Ellis.*