Donald Ray FREDERICK,
Plaintiff-Appellee,
Cross-Appellant,

Aetna Casualty & Surety Co.,
Intervenor-Appellee,

v.

MOBIL OIL CORPORATION,
Defendant-Appellant,
Cross-Appellee,

Elevating Boats, Inc., Defendant,
Cross-Appellee.

No. 84–3216.

United States Court of Appeals,
Fifth Circuit.

June 28, 1985.

Christovich & Kearney, R.K. Christovich, New Orleans, La., for Mobil Oil Corp.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Lawrence S. Kullman, New Orleans, La., for Donald Frederick.

Timothy M. Waller, Sr., Metairie, La., for Aetna.

George J. Dowd, Braithwaite, La., for Elevating Boats.

Before RANDALL, JOHNSON and GARWOOD, Circuit Judges.

PER CURIAM:

Mobil Oil Corporation, the owner of a fixed offshore oil platform in the Gulf of

Mexico, challenges a judgment against it in the sum of $305,818.52, plus interest from the date of judicial demand, for negligently causing the injury of a subcontractor's employee. Mobil asserts that the district court erred (1) by refusing, on the strength of the immunity from tort liability granted to employers by the Longshoremen's and Harbor Workers' Compensation Act, to direct a verdict in Mobil's favor, (2) by instructing the jury on the Louisiana rescue doctrine, (3) by awarding prejudgment interest, and (4) by refusing to grant a mistrial following allegedly prejudicial closing remarks by the plaintiff's counsel. Donald Ray Frederick, the injured employee, claims that the district court erred by *sua sponte* amending its original judgment, after the lapse of more than ten days following its entry, to deprive him of prejudgment interest on a substantial portion of the damages awarded by the jury. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the autumn of 1978, Donald Ray Frederick (Frederick), a journeyman welder, was employed by Max Welders, Inc. (Max Welders). Max Welders had been hired by Mobil Oil Corporation (Mobil) to perform maintenance on Mobil's offshore oil platforms in the Gulf of Mexico. On September 26, 1978, Frederick and the other members of his crew were assigned the task of replacing a boat bumper on one of Mobil's platforms. The workers were transported to the platform on the M/V DANIEL DEAN ELEVATOR, a boat chartered by Mobil from Elevating Boats, Inc. (Elevating Boats). The boat was operated on that day by employees of Elevating Boats.

To facilitate replacement of the boat bumper, an oblong hole had previously been cut in the floor of the platform landing to which the boat bumper was affixed. Frederick had noticed the hole on the previous day and had in fact been warned of its existence. Early on the morning of September 26, the DANIEL DEAN pulled to within three feet of the boat bumper to discharge its passengers. Frederick was the first to disembark. Using a rope attached to the platform, he swung first across the three-foot span between the DANIEL DEAN and the boat bumper and then from the bumper to the rig landing itself, a distance of another three feet. Frederick was careful to avoid the oblong hole in the landing floor. Moments later, as he was placing his tools on the landing, with his back to the DANIEL DEAN, Frederick heard someone aboard the boat shout for help. Frederick turned around in time to see a fellow employee, Clayton Dozar, standing on the boat bumper with the swing rope in his right hand and a forty- to fifty-pound box of welding rods on his opposite shoulder. Thinking that Dozar was having trouble maintaining his balance, Frederick quickly straddled the distance from the landing to the boat bumper and removed the box of welding rods from Dozar's shoulder. In the process of stepping back onto the landing, Frederick fell into the hole on the landing floor, causing injuries to his ear, shoulder, and back.

All three of Frederick's injuries eventually required corrective surgery. The surgery left him with a ten percent permanent disability in his neck, with a twenty-five percent permanent disability in his back, and totally deaf in one ear. Frederick received statutory compensation payments under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.*, from Max Welders' insurance carrier, Aetna Casualty & Surety Company (Aetna), in the amount of $82,201.04, of which $30,818.52 was specifically for medical expenses.

Frederick filed suit against Mobil and Elevating Boats seeking damages for the injuries sustained in the fall aboard the Mobil platform. He asserted that Mobil is liable both for negligence in its role as the owner of the platform and for negligence and unseaworthiness in its role as the vessel charterer of the DANIEL DEAN. He also asserted that Elevating Boats is liable for negligence in its role as the owner-operator of the DANIEL DEAN. Aetna intervened to enforce a lien for compensation

benefits paid to Frederick under the LHWCA. The parties stipulated that Aetna's lien is in the amount of $82,201.04. The parties further stipulated that medical expenses would not be submitted to the jury as an element of damages; rather, they agreed that, in the event that Mobil or Elevating Boats was found liable, the district court would simply add $30,818.52 to the damages assessed by the jury.

A jury found Mobil negligent in its capacity as rig owner. The jury also found, however, that Mobil and Elevating Boats were not negligent in their respective roles as charterer and owner-operator of the DANIEL DEAN. The jury assessed damages in the sum of $275,000. On January 26, 1984, the district court entered judgment as follows: (1) that Frederick take nothing from Elevating Boats; (2) that Frederick recover from Mobil the sum of $275,000, plus prejudgment interest from the date of filing suit; and (3) that Aetna recover from Mobil the sum of $30,818.52, plus prejudgment interest from the date of filing suit. The court apparently overlooked the $51,382.52 balance of Aetna's lien claim; that sum is not mentioned anywhere in the original judgment.

On February 2, 1984, Mobil filed a motion for new trial or for an amended judgment. The motion alleged various grounds but did not challenge the district court's award of prejudgment interest. The court denied the motion on February 29. On March 5, Mobil filed a second motion to amend the judgment in which it alleged for the first time that the district court's award of prejudgment interest was improper. The motion was denied on the same day. On March 15, the court on its own motion amended the judgment to recognize the full amount of Aetna's compensation lien. The amended judgment provides, in effect, that $51,382.52 of the sum previously awarded to Frederick shall instead be paid by Mobil to Aetna along with the proportionate share of prejudgment interest that has accrued with respect to that sum.

Mobil filed a timely appeal from the judgment in which it raises several issues. First, Mobil asserts that, as a general contractor, it is immune from tort liability to Max Welders' employees under the holding of *Washington Metropolitan Area Transit Authority v. Johnson*, —— U.S. ——, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984). Second, Mobil claims that the district court erred by instructing the jury on the Louisiana "rescue doctrine," or, alternatively, that, even if the doctrine applies in this case, the court's instruction was incomplete and misleading. Third, Mobil argues that the court erroneously refused to declare a mistrial following allegedly prejudicial closing remarks by Frederick's counsel to the effect that Max Welders, as Frederick's employer, could not be sued by Frederick in this lawsuit. Finally, Mobil challenges the award of prejudgment interest.

Frederick cross-appealed. He asserts that the March 15 amendment to the judgment, by shifting prejudgment interest on the nonmedical portion of Aetna's lien recovery from Frederick to Aetna, deprived him of a substantial portion of his award. He alleges that, because more than ten days had elapsed from its original entry, the district court lacked the jurisdiction to make such a substantive change in the judgment.[1]

## II. GENERAL CONTRACTOR'S IMMUNITY FROM TORT LIABILITY

■ Mobil argues first that, under the Supreme Court's recent decision in *Washington Metropolitan Area Transit Authority v. Johnson*, —— U.S. ——, 104 S.Ct. 2827, 81 L.Ed.2d 768 (1984), Mobil is

---

1. On appeal, Frederick also urges that the district court erred by refusing to allow his expert to state his opinion about the propriety of Elevating Boats' conduct in operating the DANIEL DEAN and by refusing to give a proposed instruction regarding the duty of a vessel operator to provide a reasonably safe means of egress to its passengers. Frederick asks us to consider these issues, however, only in the event that we reverse as to Mobil's liability and remand the case for a new trial. Because of our disposition of Mobil's appeal, we do not consider these issues further.

deemed to be Frederick's LHWCA "employer" and, accordingly, is immune from tort liability under section 5 of the Act, 33 U.S.C. § 905(a).[2] Because of recent amendments to the LHWCA, this argument must fail. In 1984, Congress legislatively overruled the *Washington Metropolitan* decision. *See* Pub.L. No. 98–426, § 4, 98 Stat. 1639, 1641 (1984); *see also Martin v. Ingalls Shipbuilding*, 746 F.2d 231, 233 n. 1 (5th Cir.1984). The 1984 amendments were effective on September 28, 1984, and apply "both with respect to claims filed after such date and to claims pending on such date." Pub.L. No. 98–426, § 28, 98 Stat. 1639, 1655 (1984). We need not decide what effect *Washington Metropolitan* would have had on this case if it were still the law; the decision is clearly of no moment now.

Under the present version of the LHWCA, a contractor shall, for purposes of section 5's tort immunity, "be deemed the employer of a subcontractor's employees *only if the subcontractor fails to secure the payment of compensation.*" *Id.* § 4(b), 98 Stat. at 1641 (emphasis added). Mobil, however, does not claim that Max Welders, Frederick's actual employer, failed to obtain compensation coverage. The intervention of Aetna, Max Welders' LHWCA insurer, to secure reimbursement for compensation payments to Frederick would belie any such assertion. Moreover, Mobil does not allege that it acquired any compensation coverage for the benefit of Max Welders' employees. Mobil's naked allegation that it is a general contractor is clearly an insufficient basis upon which to

afford it tort immunity under the Act. *See Martin*, 746 F.2d at 233.

## III. THE LOUISIANA RESCUE DOCTRINE

Frederick obtained the following jury instruction on the Louisiana[3] rescue doctrine:

> A rescuer is favored in the eyes of the law. If you find that Mr. Frederick sustained his injury in the course of trying to rescue a fellow worker who was or appeared to be in imminent peril, then you should not find that he was contributorily negligent merely because he failed to make the wisest choice to accomplish this purpose. However, I instruct you that even though the rescuer need not make the wisest choice, that rescuer will be contributorily negligent if he failed to act in a reasonable manner.

The parties agree that, as far as it goes, this instruction correctly states Louisiana law. Mobil, however, argued to the district court that the rescue doctrine is inapplicable on the facts of this case and that, at any rate, the above instruction is not a complete statement of the law. Accordingly, Mobil objected to the giving of any instruction on the rescue doctrine and, alternatively, sought to have the instruction supplemented with the following sentence: "The cause of an injury to a rescuer is the fault which created the peril to those whom he attempts to aid."

■ Mobil argues that the rescue doctrine does not apply on these facts because the testimony made clear that, at the time of his injury, Frederick was not attempting

---

**2.** 33 U.S.C. § 905(a) provides in part:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation un-

der the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death.

**3.** It is undisputed that, to the extent that it does not conflict with federal law, Louisiana substantive law applies, as "surrogate federal law" under the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.*, to Frederick's claims against Mobil in its role as owner of the platform on which Frederick was injured. *See Rodrique v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 357, 89 S.Ct. 1835, 1838, 23 L.Ed.2d 360 (1969).

to rescue Dozar, his fellow employee; rather, according to Mobil's reading of the evidence, Frederick was trying to prevent the box of welding rods that Dozar was carrying on his shoulder from falling into the Gulf.[4] In support of this claim, Mobil cites certain testimony which, if read in isolation, could justify the conclusion that Frederick's concern was for the box, not for the man. We must, however, reject Mobil's argument for two reasons. First, the Louisiana rescue doctrine applies to rescue attempts directed at property as well as persons. *See Inseco v. Cambridge Mutual Fire Insurance Co.*, 447 So.2d 606 (La.App. 3d Cir.1984) (injury to third party while putting out house fire); *see also* Restatement (Second) of Torts § 445 (1965) (cited with approval in *Carter v. City Parish Government*, 423 So.2d 1080, 1086 (La. 1982)). This is not, however, a complete answer to Mobil's contention because Frederick sought and obtained an instruction solely on the doctrine's application to the rescue of persons.

■ We must nonetheless reject Mobil's argument because there is substantial evidence in the record that Frederick's rescue attempt was in fact directed at Dozar, not the box of welding rods. Testimony at trial indicated that Frederick was alerted by a warning cry from someone on the DANIEL DEAN that Dozar was in danger of falling. Frederick testified that, upon turning around in response to this warning cry, Dozar looked "nervous" and "scared" and appeared to be "unsteady" under the weight of the welding rods. Frederick testified that he "grabbed the rods to help the man." It is, of course, not for us to decide whether the box or the person was in fact the object of the rescue. Because there was sufficient evidence from which the jury could have found that it was the latter, the court did not err in giving the instruction.

Mobil argues next that, assuming that this is a proper case for a rescue instruc-

tion, the district court erred in failing to include in the instruction the additional statement that "the cause of an injury to a rescuer is the fault which created the peril to those whom he attempts to aid." Mobil argues that, according to the Louisiana cases of *Carter*, 423 So.2d at 1080, *Gambino v. Lubel*, 190 So.2d 152 (La.App. 4th Cir.1966), and *Grigsby v. Coastal Marine Service*, 235 F.Supp. 97 (W.D.La.1964), this sentence is necessary to make the court's summary of the doctrine complete. Mobil's position is that, as a factual matter, Max Welders, because its employees placed the welding rods on Dozar's shoulder, is solely responsible for Frederick's injuries. Mobil contends that the district court's failure to give the supplemental instruction somehow precluded Mobil from making this argument to the jury.

■ Frederick responds that Mobil desired the supplemental instruction so that it could in effect transform its factual argument into a legal one by maintaining before the jury that, as a matter of law, the only legal cause of harm to a rescuer is the conduct that causes the initial peril and makes the rescue attempt necessary or that the rescue doctrine only applies against the party who created the initial peril. Both of these propositions are, according to Frederick, erroneous, thus making the supplemental instruction unnecessary. We agree with Frederick that, under Louisiana law, both of these propositions are erroneous. *See Chastain v. Allstate Insurance Co.*, 212 So.2d 243 (La.App. 2d Cir.1968) (applying rescue doctrine notwithstanding fact that conduct of defendant-tortfeasor did not cause the initial peril that made the rescue attempt necessary). The district court would not, therefore, have erred in refusing the instruction if the sole justification for it was that it could provide a predicate for making either of these arguments.

Mobil asserts, however, that the instruction was needed to make clear to the jury,

---

**4.** Mobil also contends that the rescue doctrine does not apply here because Frederick admitted that, prior to the accident, he was aware of the existence of the hole. The basis for this contention is not explained and we can discern none.

not that the negligence, if any, of Max Welders' employees was, as a matter of law, the *only* legal cause of the accident, but simply that the negligence of Max Welders' employees, if any, is not precluded from being a legal cause of the accident. The cases cited by Mobil do in fact state as a general proposition the substance of the proposed instruction. The context of those cases makes clear that the statement means simply that, once an actor's negligence threatens harm, actions taken by another to avert the threatened harm are not necessarily a superseding cause that will preclude the original actor's liability. With that understanding of its meaning, the instruction arguably would have aided Mobil in presenting its theory of the case to the jury.

■ We must, however, ultimately reject Mobil's argument. We note first that, although the requested charge is in language identical to that found in some of the cases, standing alone it is ambiguous and, in the context of this case, would likely have confused rather than enlightened. The cases from which the language has been extracted by Mobil discuss the rescue doctrine in the light of two classes of conduct: (1) the negligence causing the initial peril and (2) the conduct of the rescuer. In such a context, a statement that "the cause of an injury to a rescuer is the fault which created the peril to those whom he attempts to aid," when coupled with the proper contributory negligence instruction, adequately conveys the notion that actions and conditions apart from the conduct that created the initial peril are not necessarily superseding causes that will preclude the original actor's liability. In this case, however, we are concerned with the conduct of at least three parties: (1) Frederick, the rescuer; (2) Max Welders, the party whose conduct, according to Mobil, caused the need for the rescue; and (3) Mobil, the party whose conduct, according to Frederick, is responsible for the dangerous condition that was the immediate cause of Frederick's injuries. In this context, because the requested instruction fails to account for the existence of more than one alleged

tortfeasor, it does not clearly express the causation principle for which it stands. In fact, we think it creates a real danger of confusion; the jury could have erroneously read the instruction, as Frederick fears, to mean that, as a matter of law, the conduct of the party creating the original peril is the only legal cause of injury to a rescuer.

■ We note further that nothing in the court's charge could be construed to mean that, as a matter of law, Max Welders' conduct could not have been a legal cause of the accident. In fact, prior to the commencement of closing arguments by the defendants, counsel for Elevating Boats informed the court that he intended to argue to the jury that Max Welders' conduct was in fact the sole cause of the accident. The court responded that there was evidentiary support for such an argument and that counsel was free to make it to the jury. Both counsel for Mobil and Elevating Boats took full advantage of this opportunity and attempted to heap blame for Frederick's accident on Max Welders. Finally, we note that, given the posture of this case, a verdict against Mobil for the entire amount of Frederick's damages is sustainable if the jury could find in Mobil's conduct even the slightest causal negligence. *See Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). A review of the record reveals ample support for the conclusion that Mobil bears at least one percent of the responsibility for the accident. In these circumstances, especially since the jury was properly instructed that an accident is not necessarily proximately caused by negligence, we fail to see how the failure to give an instruction that Max Welders' conduct could be a legal cause of the accident would constitute prejudicial error.

In sum, we conclude that the jury instruction requested by Mobil is ambiguous at best and that, at any rate, the court's charge, read as a whole and in the context of the trial, could not reasonably have been construed to assert that, as a matter of law, Max Welders' conduct was not a legal

cause of Frederick's injuries. Accordingly, the district court did not commit reversible error in refusing to give the supplemental instruction.

## IV. THE ALLEGEDLY PREJUDICIAL REMARKS

■ Mobil next asserts that the district court erred by refusing to grant a mistrial when, during closing argument, Frederick's counsel told the jury that Frederick's employer, Max Welders, could not be sued and that the jury should only consider the allegations against Mobil and Elevating Boats. Mobil moved for a mistrial solely on the ground that, following this argument, the jury was not informed of the reason that Max Welders could not be sued. This alleged error was immediately cured, however, when the court instructed Frederick's counsel to explain his statement. Counsel stated to the jury: "[U]nder the law ... [Max Welders], as Frederick's employer, had the obligation to him for workmen's compensation benefits which have been paid. They may not be brought into this litigation." Mobil argues on appeal that the effect of this discussion, together with the court's refusal to supplement the instruction on the rescue doctrine, was to leave the jury with the erroneous impression that the negligence of Max Welders' employees could not, as a matter of law, have been a proximate cause of the accident. We disagree. The jury was simply informed that Max Welders could not be held liable in this action for its conduct because it had a statutory duty to pay workers' compensation benefits. This is a correct statement of the law. Moreover, this is precisely the information with which, following Frederick's introduction of the subject, Mobil asked that the jury be provided. Nothing in these statements or, for that matter, in the district court's charge prevented Mobil from arguing to the jury that it was the negligence of Max Welders,

not Mobil, that caused Frederick's accident. In fact, as we have seen, both Mobil and Elevating Boats took full advantage of this opportunity during their own closing statements. Once Frederick's counsel, at Mobil's request, explained why Max Welders was not a party to this suit, Mobil did not renew its objection or request any further curative instructions. In these circumstances, it is manifest that the district court did not err in refusing to declare a mistrial.

## V. THE PREJUDGMENT INTEREST AWARD

■ Finally, Mobil argues that the district court erroneously awarded prejudgment interest on the damages assessed by the jury. This argument is premised on the notion that the federal interest statute, 28 U.S.C. § 1961,[5] applies in this case and that it specifically precludes an award of prejudgment interest. This argument is foreclosed by *Olsen v. Shell Oil Co.*, 708 F.2d 976 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). In *Olsen,* we noted that our decisions on the award of prejudgment interest in OCSLA cases have not always reached uniform results. We sought there, however, to harmonize our decisions and to discern a path for future cases. For reasons that we need not repeat here, we held in *Olsen* that (1) section 1961 does not, as Mobil contends, preclude an award of prejudgment interest; (2) prejudgment interest is proper in an OCSLA case to the same extent that it is permitted by the law of the state that has provided, as surrogate federal law, the substantive rules of decision governing the case; and (3) in an OCSLA case applying Louisiana law, La.Rev.Stat. § 13:4203 provides adequate support for an award of prejudgment interest.

*Olsen* controls this case, and we need not repeat its reasoning here. It is sufficient

---

**5.** 28 U.S.C. § 1961(a) provides in part:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the laws of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of entry of the judgment....

to note that Mobil's argument is based entirely on pre-*Olsen* cases that in *Olsen* were expressly distinguished or explained away.

## VI. THE DISTRICT COURT'S AMENDMENT OF JUDGMENT

Frederick filed a cross-appeal in which he argues that the district court lacked jurisdiction to amend its judgment on March 15, 1984. This argument is based on the notion that, under Rule 59, Fed.R.Civ.P., a district court only retains jurisdiction to amend a judgment for ten days following its entry unless, under Rule 60(a), Fed.R. Civ.P., the amendment simply cures a clerical error. Frederick does not maintain, however, that the district court erroneously awarded prejudgment interest to Aetna on the $30,818.52 portion of its compensation lien representing medical expenses. Neither does Frederick argue that the district court erred on March 15 in amending the judgment to subtract $51,382.52—the balance of Aetna's compensation lien that was overlooked by the court in its original judgment—from his recovery from Mobil and to award that sum to Aetna. Frederick's argument is solely that the court erred in shifting to Aetna the proportionate share of prejudgment interest that has accrued on the sum of $51,382.52.

We think it is clear that the changes made by the district court in the March 15 judgment were of a clerical nature and that the district court had jurisdiction to make them under Rule 60(a). We note first that Frederick does not attack the amended judgment insofar as it shifts $51,382.52 in damages from Frederick to Aetna. Given the parties' stipulation with respect to Aetna's compensation lien, we think this change was clearly a clerical one within the meaning of Rule 60(a). *Cf. Chavez v. Balesh*, 704 F.2d 774 (5th Cir.1983) (amendment to award $2000 in liquidated damages to which the court found the plaintiff was entitled in its findings of fact but which was overlooked in the judgment). Frederick did not contest the district court's decision, which was clearly expressed in its original judgment, to award to Aetna the prejudgment interest that has accrued on that portion of the damages on which Aetna has a lien. We question, therefore, whether Frederick is now in a position to complain about the amended judgment, which simply corrects an oversight with respect to the amount of Aetna's lien. At any rate, it is settled that, when prejudgment interest is available as a matter of right, a court may, under Rule 60(a), amend a judgment to award it. *See* 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2854, at 152 (1973). According to *Olsen*, Louisiana law governs the award of prejudgment interest in this case. Under Louisiana law, prejudgment interest in "ex delicto" proceedings is available as a matter of right. La.Rev.Stat. § 13:4203; *see also Byrd v. Hunt Tool Shipyards, Inc.*, 650 F.2d 44, 49 (5th Cir. 1981). Moreover, when, under Louisiana law, a judgment is amended to provide prejudgment interest as a matter of right to a plaintiff, the judgment should also be amended to provide interest on the amount of the judgment awarded to an intervenor to satisfy a workers' compensation subrogation lien. *See Breaux v. Roy Young, Inc.*, 397 So.2d 1384, 1391 (La.App. 3d Cir. 1981). We are convinced, therefore, that the March 15 amendment was in all respects a clerical one within the district court's authority under Rule 60(a).

## VII. CONCLUSION

For the reasons set forth above, the judgment of the district court is affirmed in all respects.

AFFIRMED.